## BOARD OF COM'RS OF MUSKOGEE COUNTY et al. v. MORELY et al.

(Circuit Court of Appeals, Eighth Circuit. May 12, 1925.)

No. 6755.

1. **Judgment** ⬤⟹299(1)—**Power to alter final order ceases with term.**

Power of trial court to alter its order ceased with term during which it was entered; it being final in character, and no pleading having been filed or order made carrying control of it beyond the term.

2. **Judgment** ⬤⟹340—**Court without power to set aside order and enter it of later date, to extend or revive period for appeal.**

Though order is attacked after the term for fraud in its procurement, the court, having found there was no fraud and refused to set it aside on that ground, has no power to set it aside and re-enter it as of later date, to extend or revive time for appeal therefrom.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Franklin E. Kennamer, Judge.

Suit by the United States against Bessie Wildcat and others. From an order made on motion and petition of Muskogee County, Okl., to which S. L. Morely and another, receivers, and others, were made parties, to set aside a prior order, the Board of Commissioners and Treasurer of said County appeal. Reversed, with instructions.

S. B. Flynn and Robert M. Rainey, both of Oklahoma City, Okl. (Calvin Jones, R. E. Jackson, and W. A. Green, all of Muskogee, Okl., on the brief), for appellants.

Ralph A. Smith (Charles B. Stuart, of Oklahoma City, Okl., on the brief), for appellees.

Before STONE and KENYON, Circuit Judges, and SCOTT, District Judge.

STONE, Circuit Judge. In the case of United States v. Bessie Wildcat et al., a receiver was appointed who was succeeded by other receivers. These various receivers collected a large fund resulting from oil royalties. The taxing officials of Muskogee county, Okl., attempted to assess this fund for ad valorem taxes. To prevent such action, the receivers filed an application, in the Wildcat suit, for a restraining order and an injunction to prevent this assessment and levy. Other interested counties intervened. The result of this tax litigation was an order entered (May 29, 1923) upon a stipulation and an agreed statement of facts. This order recited that sums due full-blood Indians from this fund were not taxable; that the balance (except such as invested in United States bonds) was taxable as follows: That accumulated prior to May 11, 1918, was taxable only after November 28, 1921, while that accumulated after May 11, 1918, was taxable thereafter; that Muskogee county should be paid taxes for the years 1919 and 1920 at a designated rate; that Pittsburg and Oklahoma counties should be paid taxes for the years 1921, 1922 and 1923 at designated rates. In September following, Pittsburg county and Oklahoma county filed applications for disbursements under this order (the Oklahoma county application being amended slightly in amount in November). These applications covered taxes for the years 1921, 1922 and 1923 as provided in the order. October 15, 1923, Muskogee county filed a similar application covering the taxes for the years 1919 and 1920 provided by the order. November 8, 1923, payments were ordered to Pittsburg and Oklahoma counties. Thereafter, on November 26, 1923, Muskogee county filed a "motion to set aside order of May 29, 1923, so far as the same affects Muskogee county, Oklahoma." February 1, 1924, an amended motion was filed which was as follows:

"Comes now Muskogee county, Oklahoma, and leave first having been obtained of this honorable court, files this its amended motion to set aside the order of this court entered herein on the 29th day of May, 1923, copy of which said order is hereto attached and marked Exhibit A and as grounds therefor alleges and states:

"I. That the subject-matter of the aforesaid order is the taxability of the funds in the hands of the receivers herein, based upon a stipulation and agreed statement of facts entered into by the parties in interest and purporting to carry out the decision of the judge of this court theretofore orally announced in open court on the 7th day of May, 1923.

"II. The said order of court as presented to and signed by the Honorable R. L. Williams, judge of this court, provided among other things: 'Second. That the royalties accumulated prior to May 11, 1918, were not subject to taxation until November 28, 1921, after which time the same were taxable except such portions thereof as were invested in United States bonds,' whereas the decision of this court as theretofore announced was that the royalties accumulated prior to July 9, 1917, were not subject to taxation.

"III. Movant further alleges and states that when the said order was presented to the Honorable R. L. Williams, judge of this court, on the 29th day of May, 1923, that Judge Williams stated that the order as drawn was not in accordance with his decision and it was thereupon represented to him that said written order as presented was agreed to by all parties in interest, which said representation was not true so far as it applied to or affected Muskogee county, Oklahoma, for in truth and in fact said Muskogee county had not agreed to said order as written and presented to this honorable court, was not present in court by any of its counsel at the time said order was presented and signed and that the said counsel had not theretofore been notified that said order would be presented to said court at said time.

"IV. Movant further says the Honorable R. L. Williams, judge of said court, would not have signed said order except for said representation which he believed to be true and upon which he relied, and that the procuring of said order in the manner aforesaid constitutes a fraud upon this court and upon this movant and that if permitted to stand

it will deprive this movant of many thousands of dollars in taxes to which it is lawfully entitled.

"Wherefore movant prays this honorable court that summons issue for the parties interested, to wit, Black Panther Oil & Gas Company, James Brazell, O. O. Owens and Bay State Oil Company, that they be required to answer and show cause why said order should not be set aside, if any they have, and that upon a final hearing hereof that said order be vacated and that this cause be set down for hearing upon the stipulation heretofore filed and such other evidence as either party may desire to offer."

On the same day (February 1, 1924) that county filed its "supplemental bill" to the same effect as the above amended motion.

A different judge heard evidence upon the supplemental bill and the amended motion (treating them as consolidated). At the close of the hearing (March 11, 1924), the court announced his views as follows:

"The Court: In this case, gentlemen, I have concluded to vacate the order distributing the taxes, and find that there was no fraud or any bad faith on the part of any one in obtaining the order, and will re-enter the same order that was signed by Judge Williams. I do that on the ground that Judge Williams was under the impression, at least, that he believed at the time that it was satisfactory to Muskogee county. While he had no statement from any of the counsel to lead him to believe that, he evidently did believe it would be satisfactory for Muskogee county. I would like for you gentlemen to prepare a journal entry to that effect.

"Mr. Rainey: If your honor please, in that connection I think this ought to be a final order and probably, I don't know whether you want it in the same order or not. Now, the tax rate for these years was to be filed under this stipulation. I don't believe it had been filed. I have it here, and I guess probably we can file it under that stipulation, and feel we can agree on it, and then there ought to be a final order fixing the amount of money under the order you have entered.

"The Court: Can't you gentlemen agree on a journal entry to that effect?

"Mr. Martin: That order should, I believe, if the court please, order the balance of the fund to be turned over to the parties entitled to have it.

"The Court: I will do that.

"Mr. Rainey: Now, I have it figured up, it is approximately $53,000 under Judge Williams' order.

"Mr. Martin: As I understand it, the court is entering the same order that Judge Williams entered.

"Mr. Rainey: As I understand it, the order Judge Williams intended to enter.

"The Court: No, no; just the order that he signed, I am simply doing that for this purpose, to give the right to appeal, if you desire to prosecute it. I am not going into the merits and decide whether I really think that is the correct amount or not, or that you would be entitled to more. I am going to leave that matter alone. Just simply to preserve your rights, that you may prosecute and appeal if you so desire.

"Mr. Rainey: Well, we so desire to prosecute an appeal.

"The Court: Now, I will give each exception. I am only doing this on the grounds that I believe that Judge Williams believed at the time he signed the order, while there was no statement made by counsel that would mislead him in that respect, that he did believe though that it would be satisfactory to Muskogee county, just like it was to Pittsburg county and Oklahoma county, and the Attorney General. In other words, he signed an order that the Attorney General presented to him the day before, which fixed the taxability of the property in May, 1918, and I presume that he thought and believed at the time he signed this order that it was agreeable to Muskogee county, just the same as it was to Pittsburg and Oklahoma counties. I am sure that his oral opinion, which he announced, fixed the date as July, 1917, but he thought after they had this conference there on May 29th and presented this journal entry that everybody was satisfied with the date fixed, and believing that, he entered the order.

"Mr. Rainey: Then your honor sustains both motions, or did you treat them as consolidated?

"The Court: Treat them as consolidated, and simply vacate the order on the ground that Judge Williams signed it through a misapprehension of the facts, in that he thought it would be satisfactory to Muskogee county. I don't think Mr. Jackson was at fault in not being present, because he had heard this oral decision in May, on the 7th and he thought the matter was settled.

"Mr. Rainey: Now, we want the order to show that the court's oral decision was July 9, 1917; that is, on the law points, but as entered he entered it through misapprehension as your honor has stated. Else, I think, we would want to file a motion to correct the

order, as set aside, to conform with the real decision of the court.

"The Court: Well, I would find as a matter of fact that, in the oral decision he announced on May 7th, he fixed the taxability of the property in July, 1917, but in the written journal entry of judgment he fixed it in 1918, believing it satisfactory to all parties connected with the case.

"Mr. Rainey: We will draw that showing our exceptions and notice of appeal.

"The Court: Yes.

"Mr. Rainey: I will say very frankly, after that journal entry I am going to file another motion to conform it with the decision of the court. My motion will be this: That this be the full judgment, then I will file a motion to correct, to conform to the pronouncement of the law, so as to take the whole matter up.

"Mr. Smith: As I understand the way it will be handled, there will be an order vacating this order; then another order entered that will be in substance the same order entered on May 29th.

"The Court: Yes, that is correct. There will be another order; just a difference of [the] date of the order and exceptions allowed.

"Mr. Rainey: Then your order will be a judgment filed to-day as his judgment, or your honor's judgment: or do you just direct his order be set aside and refiled as of this date?

"The Court: What I intended to do is to refile that same order as the order of this court fixing the taxability of the property just like he did for the Attorney General and these other counties. In other words I intended to make that the judgment of this court. Of course, then if there are any further motions to vacate that judgment, that will be another matter.

"Mr. Rainey: What I was inquiring, whether you intended to make it your honor's decision upon the facts, or just re-enter Judge Williams' decision?

"The Court: Well, of course, it will be just adopting his decision; that is the substance of it, the effect of it. I merely adopt the journal entry he signed there as my judgment in the case. I am doing that simply so as to save your right to appeal. If you think you are entitled to more taxes and probably convince the Circuit Court of Appeals and allow you whatever the law gives. I think you can draw those journal entries. You understand what I mean?"

On the same day, the court entered two orders. The essential portion of the first of these orders is as follows:

"Thereupon the further hearing of said cause is continued until the 11th day of March, 1924, and now on this 11th day of March, 1924, all the parties appear by the same counsel, and argument of the cause is presented to the court, and by the court heard and considered, and the court being advised in the premises finds that no fraud or misrepresentation has been committed, but that the Honorable R. L. Williams, the judge of the court at the time the decree of May 29, 1923, was passed and entered, was of the opinion that the decree was acceptable to all the parties interested as to the time at which the property in question became subject to taxation, to wit, the 11th day of May, 1918, when in fact it was not acceptable to movant and the court further finds from the evidence that the oral announcement of the conclusions and holdings of the court announced by Judge Williams on May 7, 1923, and his opinion on May 29, 1923, gave the time at which said property became taxable as July 9, 1917.

"The court further finds that for the purpose of preserving the right of appeal of the board of county commissioners of Muskogee county, Oklahoma, from the order entered by the court on the said 29th day of May, 1923, said order will be vacated and re-entered as of this date."

The second of these orders followed the order of May 29, 1923, in declaring May 11, 1918, as the date controlling taxability of the receivership funds and, upon that basis, found certain sums due Muskogee county for the years 1919 and 1920, respectively.

From this last order this appeal was brought, application for appeal and assignments of error being filed June 11, 1924.

Appellant presents here two propositions which it defines as follows:

"First. That of the royalties accumulated and in the hands of the receivers prior to July 9, 1917, the one half belonging to Martha Jackson, a restricted Indian, were nontaxable prior to said date, but the other half, belonging to the Black Panther Oil & Gas Company and associates, were taxable from the date said royalties were collected and paid into the hands of the receivers.

"Second. All the accumulated royalties including the sum of $418,261.04 paid to Martha Jackson and Saber Jackson were taxable on and after the 1st day of January, 1918, since the title thereto passed from the restricted Indian, Martha Jackson, by virtue of the probate sale of July 9, 1917."

These propositions do not present the contention that the order of the court of May 29, 1923, should have been entered in accordance with the thought of the judge that July 9, 1917, was the date determining taxability instead of May 11, 1918 (as contained in that order). That order determined that none of the fund was taxable before May 11, 1918, and that $418,261.04 (royalties due the Indians, Martha Jackson and Saber Jackson) of that fund was not taxable at any time. If that order had been entered with the date July 9, 1917, in place of May 11, 1918, the above propositions presented here by appellant would be as pertinent as they are to the order actually entered. In short, this appeal is not from the action of Judge Kennamer in refusing to reform the order of Judge Williams by replacing the date May 11, 1918, therein, with July 9, 1917—it is from that order in other respects as well. It is of the same effect as though taken from the order entered by Judge Williams. This aspect of the appeal becomes important because it relates to an inquiry as to the jurisdiction of this court. Before examining the merits, it is the duty of this court to determine its jurisdiction to entertain this appeal. It is necessary to understand just what was done by the court.

[1, 2] The order of May 29, 1923, was entered during the regular term of the court. The order of March 11, 1924, was during a regular term of the court. There is no showing in the record that these orders were entered at the same term. The power of the trial court to alter the order of May 29, 1923, ceased with the end of the term during which that order was entered since it was final in character and no pleading had been filed or order of court made carrying control thereof beyond the term. After the term, the court could correct the order by nunc pro tunc order, but that is not what was sought here. The order could, also, be attacked collaterally for fraud. That was the form of the attack here by the supplemental petition and the amended motion to set aside. But the court found there was no fraud in the procurement of the order and refused to disturb it upon that ground. Therefore the bald situation is that the court for the sole and expressed purpose of enabling appellant to protect itself from the effect of the order of May 29, 1923, sought to revive the then expired right of appeal therefrom by entering orders which set aside and immediately re-entered, in substance, the earlier order in so far as it affected appellant. That cannot be done. The time for appeal is definitely settled by statute. When that time has expired as to any decree, it cannot be revived. This result follows whether the time for appeal expires during the judgment term or afterwards. While a court, during the judgment term, has control over its decrees and can alter or set them aside, yet that power does not extend to control over the time for appeal by the device of setting aside and re-entering the decree for the sole purpose of extending or reviving the period for appeal. The court had no power to set aside the order of May 29, 1923, and re-enter it, in effect, as of March 11, 1924.

The case is reversed with instructions to enter an order denying the relief asked in the "supplemental bill" and the "amended motion to set aside" and dismissing such "supplemental bill."